UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI ANN MATA,

               Plaintiff,                       Case No. 2:18-CV-12102
                                            District Judge David M. Lawson
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION TO REMAND PURSUANT TO SENTENCE FOUR AND SIX (DE 15), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion to remand pursuant

to Sentences Four and Six (DE 15), **GRANT** Defendant's motion for summary

judgment (DE 17), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Lori Ann Mata, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance (DI) benefits

and Supplemental Security Income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion to remand pursuant to Sentences Four and Six (DE 15), the Commissioner's cross-motion for summary judgment (DE 17), Plaintiff's reply (DE 18) and the administrative record (DE 11).

### A.      Background and Administrative History

Plaintiff filed her applications for DI and SSI benefits on January 23, 2015, initially alleging a disability onset date of December 22, 2011. (R. at 202-13.) She subsequently amended her alleged onset date to October 15, 2014. (R. at 227.) In her disability report, Plaintiff lists bipolar disorder, major depression, attention deficit hyperactivity disorder (ADHD), and personality disorder as limiting her ability to work. (R. at 249.) Her applications were denied in August 11, 2015. (R. at 108-131.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 150-151.) On July 25, 2017, ALJ JoErin O'Leary held a hearing, at which Plaintiff, her mother, and a vocational expert (VE), Sue Lyon, testified. (R. at 42-87.) On October 11, 2017, ALJ O'Leary issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14-41.)

Plaintiff submitted a request for review of the hearing decision/order. (R. at 200-201.) However, on May 24, 2018, the Appeals Council denied Plaintiff's

request for review. (R. at 1-7.) Thus, ALJ O'Leary's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 5, 2018.

## B.   Plaintiff's Medical History

The administrative record contains approximately 1,011 pages of medical records, which were available to the ALJ at the time of her October 11, 2017 decision. (R. at 339-1,350 [Exhibits B1F-B36F].) These materials will be discussed in detail, as necessary, below.

## C.   The Administrative Decision

### 1.   The five-step analysis and RFC

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2014, the amended alleged onset date. (R. at 20.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: gastroparesis, bilateral knee osteoarthritis, major depressive disorder, bipolar disorder, post-traumatic stress disorder, and panic disorder. (*Id*. at 20-21.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 21-23.) **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined

that Plaintiff had the RFC:

> . . . to perform light work . . . except [she] must have access to restroom
> facilities, so no outdoor work. [*i.e. environmental limitations*] She can
> perform simple tasks. The claimant can work alone or in small, familiar
> groups. She can tolerate occasional interaction with the public. She
> cannot perform production rate work. [*i.e, mental limitations*] She must
> avoid hazards such as unprotected heights or dangerous moving
> machinery. [*i.e., environmental limitations*] The claimant will be
> expected to miss one day of work every month. [*i.e. non-exertional
> limitation*]

(*Id*. at 23-32.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 32-33.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as general office clerk, bench or table assembler, and packer.  (*Id*. at 33-34.)

The ALJ therefore concluded that Plaintiff had not been under a disability, as

defined in the Social Security Act, since October 15, 2014.  (*Id*. at 34.)

## 2.    "Fresh look" on remand

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

In her opinion, ALJ O'Leary recognized that Plaintiff previously filed applications for DI and SSI benefits which were denied by a different ALJ on May 16, 2013 (R. at 18, citing R. at 88-106), but then found that she is not bound to that prior decision under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) because there is new and material evidence justifying a change in Plaintiff's RFC, although she found that there is no new and material evidence concerning Plaintiff's past relevant employment and therefore adopted the prior decision's finding with regard to that step. (R. at 18.) The Sixth Circuit recently modified the *Drummond* holding in *Early v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which holds that principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. Having determined that she was not bound by any prior decision with regard to Plaintiff's RFC, the ALJ here gave the evidence in the record a "fresh look," thus satisfying *Early. See Kimball v. Comm'r of Soc. Sec.*, No. 17-12659, 2018 WL 4102845, at *5 n.4 (E.D. Mich. Aug. 7, 2018) (finding *Early* did not change the Court's analysis of pre-*Early* ALJ decision because the ALJ had concluded she was not bound by the previous RFC due to new and

material evidence), *report and recommendation adopted*, 2018 WL 4095081 (E.D. Mich. Aug. 28, 2018).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that: (1) the ALJ failed to supply "good reasons" for giving "limited weight" to the Medical Source Statement ("MSS") by her surgeon, Vasanth Stalin, M.D.; (2) the ALJ improperly rejected the opinion by her treating therapist, Amy Oleksy, LMSW; and (3) there is new and material evidence requiring a remand under Sentence Six of 42 U.S.C. § 405(g). (DE 15 at 10-18,

21-25.)[2] The Commissioner contends that: (1) the ALJ properly discounted Dr. Stalin's opinion that Plaintiff might require breaks of unspecified duration and frequency; (2) the ALJ properly discounted Ms. Oleksy's April 2017 opinion; and (3) Plaintiff's post-decision submission to the Appeals Council does not warrant relief under Sentence Six. (DE 17 at 16-20, 22-27.)

### 1. The ALJ's assessment of Dr. Stalin's Medical Source Statement is supported by substantial evidence

Dr. Stalin performed surgery on Plaintiff to install a gastric stimulator on July 21, 2017, four days before the hearing in this matter. (R. at 1347-50.) On August 3, 2017, Dr. Stalin provided a Medical Source Statement ("MSS") in which he checked a box indicating that Plaintiff would need the option to take "unscheduled breaks" "if placed in a competitive 8-hour work day." (*Id.* at 1346.) He indicated that the frequency of the breaks is "undetermined" and depends on the frequency of her symptoms. (*Id.*) He further opined that Plaintiff "will likely continue to be intermittently symptomatic" but that there were "no medical contraindications to return to work." (*Id.*)

---

[2] Plaintiff had also alleged a fourth claim of error – that the ALJ's RFC failed to consider restrictions due to Plaintiff's irritable bowel syndrome ("IBS") (DE 15 at 18-21) – but she agreed in her reply brief to waive that issue, after reviewing and agreeing with the Commissioner's argument in response that the RFC sufficiently accounts for the effects of Plaintiff's IBS diagnosis, even though she did not mention IBS by name in the decision. (DE 17 at 20-21; DE 18 at 5.)

The ALJ recognized Dr. Stalin as Plaintiff's "treating surgeon," reviewed the doctor's MSS and found that:

> Dr. Stalin's opinion about the claimant's need for unscheduled breaks is vague and does not provide the frequency or duration of these breaks. Furthermore, it appears that this limitation is based on the claimant's subjective symptoms, not objective evidence of when she would need breaks. This limitation is given little weight. However, his opinion, to the extent that it supports that the claimant could work, is well supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Therefore, this part of the opinion is accorded great weight.

(R. at 30.)

Plaintiff complains that the ALJ failed to provide good reasons for discounting Dr. Stalin's opinion in part.  (DE 15 at 10-18.)  The Commissioner responds that the ALJ properly discounted Dr. Stalin's opinion that Plaintiff might require breaks of unspecified duration and frequency. (DE 17 at 16-20.)

### a.  Treating source opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(b).  The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[3]  For claims

filed before March 27, 2017, such as this one, "the Commissioner's regulations

establish a hierarchy of acceptable medical source opinions[.]"  *Martin v. Colvin*,

207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*,

No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)).  "In

descending order, these medical source opinions are: (1) treaters; (2) examiners;

and (3) record reviewers."  *Id.*

Under the regulations, a treater's opinion must be given "controlling weight"

if "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and … not inconsistent with the other substantial evidence in [the] case

record."  20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F.

App'x 377, 384 (6th Cir. 2013).  The ALJ generally gives deference to the

opinions of a treating source "since these are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [a patient's] medical

impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

§ 416.927(c)(2); *Blakley*, 581 F.3d at 408. To qualify as a treating source, the

---

[3] The cited regulations remain in effect for claims filed before March 27, 2017.
*See* 20 C.F.R. §§ 404.1520c, 404.1527.

physician must have an "ongoing treatment relationship" with the claimant. 20

C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[4] *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature and
> extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

---

[4] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

However, while an ALJ must "always give good reasons in [the ALJ's]
notice of determination or decision for the weight [the ALJ] give[s] your treating
source's opinion,"  20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to
make clear to any subsequent reviewers the weight the adjudicator gave to the
treating source's medical opinion and the reasons for that weight," *Friend v.
Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal
quotation omitted), there is no *per se* rule that requires a written articulation of
each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§
404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x
216, 222 (6th Cir. 2010). In other words, the regulations do not require "an
exhaustive factor-by-factor analysis."  *Francis v. Comm'r of Soc. Sec.*, 414 F.
App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).  Nevertheless, the
Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is applied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir. 1999).  The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule.  *See Halloran v. Barnhart*, 362 F.3d 28, 32-33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

### b.  The ALJ properly assessed Dr. Stalin's opinion

12

Under the standard for weighing treating physician's opinions, the ALJ's analysis of Dr. Stalin's opinion is sufficient and she provides good reasons for the weight she assigns it.  She recognized Dr. Stalin as Plaintiff's treating surgeon, and that Plaintiff underwent laparoscopic Enterra II gastric neurostimulator device insertion on July 21, 2017.  (R. at 21, 30.)[5]  She assigned great weight to Dr. Stalin's statement that there was "no medical contraindication to work" because it was supported by "medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  (*Id.* at 30.)  The ALJ discussed the "other substantial evidence in the record" in depth earlier in her opinion.  (*Id.* at 20-21, 24-30.)  She recognized that Plaintiff has gastroparesis, that she reported nausea, vomiting and constipation at times and that she underwent laparoscopic Enterra II gastric neurostimulator device insertion on July 21, 2017, but noted that:  (1) the medical evidence revealed that while Plaintiff's epigastric area was tender to palpation with involuntary guarding at times; (2) her abdomen was repeatedly noted to be soft and nontender with normal bowel sounds and no guarding or rebound tenderness; (3) she did not appear to be in acute distress; (4) a 2016 colonoscopy was normal; and,

---

[5] The  Commissioner questions whether Dr. Stalin qualified as a "treating source" because he only saw Plaintiff twice before giving his opinion.  (DE 17 at 16-17, citing R. at 74, 1292-99, 1347-50.)  However, I will not reach this issue as the ALJ recognized Dr. Stalin as Plaintiff's "treating surgeon" and his analysis of Dr. Stalin's opinion as a "treating source" is sufficient.

(5) she denied vomiting or diarrhea at times and reported at times that she was "doing well" and "doing fine."  (*Id.* at 20-21, 24-25, citing R. at 366, 372, 396, 412, 439, 521, 545, 551, 556-57, 639-40,  649, 660, 684, 701, 707, 713, 738-39, 746, 753, 759, 767, 772-73, 780, 781, 791-92, 797-98, 811, 823, 1033, 1039-40, 1043, 1071, 1153, 1158, 1163, 1168, 1189, 1195-96, 1214-15, 1226, 1238, 1243, 1248, 1292-94, 1296, 1336-37, 1339.)  The ALJ also found that Plaintiff described daily activities which are not limited to the extent expected, given her complaints of disabling symptoms, including working part-time, babysitting, cleaning, cooking, and attending her son's wrestling meets.  (R. at 29-30.)

The ALJ also assigned "little weight" to Dr. Stalin's statements in the MSS that Plaintiff would need to take unscheduled breaks of undetermined frequency depending on her symptoms because it is "vague and does not provide the frequency or duration of these breaks" and because "it appears that this limitation is based on the claimant's subjective symptoms."  (*Id.* at 30.)  These are sufficient reasons to discount a treating physician's opinion.  *See Wilson*, 378 F.3d at 544-45.

Plaintiff complains that the ALJ "took a more surgical approach" to assessing Dr. Stalin's opinion by assessing "little weight" to the need for unscheduled breaks and "great weight" to the statement that there is "[n]o medical contraindication to return to work."  (DE 15 at 13-14.) However, "[a] treating physician's opinion is entitled to deference … only when supported by 'objective

14

medical evidence,' … and it may be rejected *in whole or in part* when it contradicts substantial objective medical evidence in the record." *Pethers v. Comm'r of Soc. Sec.*, 580 F.Supp.2d 572, 578 (W.D. Mich. 2008) (emphasis added, citations omitted); *see also Gregson v. Comm'r of Soc. Sec.*, No. 17-cv-13600, 2019 WL 1253473, at *7 (E.D. Mich. Jan. 2, 2019) ("[T]he ALJ did not completely reject the opinion of Plaintiff's treating physician … in assessing Plaintiff's RFC; she relied on it in part by assigning it some weight and … properly discounted it in part as inconsistent with the treatment records and with the records as a whole."), *report and recommendation adopted by* 2019 WL 762272 (E.D. Mich. Feb. 21, 2019).

Plaintiff next contends that it was "understandable" that Dr. Stalin did not provide a frequency and duration of breaks because "it was likely too early to determine how [Plaintiff] will do." (DE 15 at 14.) This concession lends further support for the ALJ's finding that this statement in Dr. Stalin's MSS – that Plaintiff needed breaks at undetermined intervals based on symptoms of unknown frequency – was too vague and equivocal to be entitled to more than "little weight." *See Smith v. Astrue*, No. 3:08cv00281, 2009 WL 2733827, at *10 (S.D. Ohio Aug. 26, 2009) ('[T]he ALJ cannot be said to have erred by failing to give controlling weight to Dr. Burch's equivocal opinion about the possible duration of Plaintiff's visual field constriction."). Further, a claimant's RFC represents "the

most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff also complains that the ALJ failed to mention the eight gastrointestinal symptoms that Dr. Stalin checked off in his MSS, and that the ALJ failed to explain how the limitation for the need to take unscheduled breaks appears to be based on Plaintiff's subjective symptoms and not the objective evidence. (DE 15 at 14-15.) However, the ALJ is not required to discuss every piece of evidence in the record. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). In addition, the ALJ did explore those symptoms earlier in her opinion, as mentioned above, where she discussed Plaintiff's examinations throughout the relevant period that noted her abdomen/bowels appeared normal and she denied symptoms at times that she now claims are disabling. (R. at 20-21, 24-25.) *See Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 612 (6th Cir. 2003) ("It was reasonable for the magistrate judge to infer that Dr. Benton's May 28, 1999 opinion was based on Plaintiff's subjective complaints since the opinion was unsupported by objective medical findings."). The ALJ also reasonably found that despite Plaintiff's symptoms, she was able to take part in a wide range of activities, including working part-time, babysitting, cleaning, cooking, doing laundry, driving, riding a bicycle, attending wrestling meets, and shopping. (R. at 29-30,

citing R. at 262-65, 278-81, 600, 604, 623, 713, 961, 969-70, 973, 981, 1028, 1264, 1272.)

Thus, the ALJ's analysis of Dr. Stalin's MSS is supported by substantial evidence and Plaintiff's first claim of error should be denied.

### 2.   Ms. Oleksy's Opinion

Plaintiff argues that the ALJ improperly "reject[ed]" the opinion of her treating therapist, Amy Oleksy, LMSW and did not comply with Social Security Ruling ("SSR") 06-03p, which provides guidance on considering opinions and other evidence from sources who are not "acceptable medical sources" in disability claims.  (DE 15 at 21-22.)  Initially, it bears noting that the ALJ did not *reject* Ms. Oleksy's opinion, but rather afforded it "little weight."  (R. at 31.)

SSR 06-03p explains that, as set forth in 20 C.F.R. §§ 404.1527(b) and 416.927(b),[6] the SSA considers "all relevant evidence in the case record when [it] make[s] a determination or decision about whether the individual is disabled. Evidence includes, but is not limited to, opinion evidence from 'acceptable medical sources,' medical sources who are not 'acceptable medical sources,' and 'non-medical sources' who have seen the individual in their professional capacity." SSR

---

[6] The versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect from August 24, 2012 to March 26, 2017 would apply to Plaintiff's October 2014 application for DI and SSI benefits.

06-03P, 2006 WL 2329939 at *4 (Aug. 9, 2006). "Other sources" include, but are not limited to, "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists[.]" *Id.* at *2. Under this ruling, the ALJ was not required to accord Ms. Oleksy's opinion any special deference, but instead was merely required to consider it and provide a sufficient explanation to allow a subsequent reviewer to follow her reasoning. *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). The ALJ met that burden here.

Ms. Oleksy completed a Mental Impairment Questionnaire on April 27, 2017, in which she opined that Plaintiff had marked limitations in 12 of 20 categories of mental functioning, and moderate limitations in four of those categories. (R. at 1212-13.) Ms. Oleksy also indicated that Plaintiff would be markedly limited in her ability to deal with work stress, off task for "2-3 hour[s]" *and* "3 or more hours" per day, and miss about three days of work per month. (R. at 1211.) The ALJ gave this opinion "little weight," finding that the checkbox assessment "is vague without defining 'markedly' and 'moderately,'" and "does not give specific limitations that [Plaintiff] would have due to these findings." (R. at 31.) She also found the opinion "confusing" because it gave two different answers for how long Plaintiff would be off-task, and that the opinion as a whole

was "inconsistent with the medical evidence of record."  (*Id.* citing R. 1238, 1243, 1260, 1295, 1336-37, 1339, 1341.)

The ALJ provided an extensive summary of Plaintiff's mental health treatment records with Ms. Oleksy from August 2014 through April 2017 earlier in her decision, documenting mostly normal mental status examinations, including normal appearance, speech, thoughts, insight, judgment, appropriate affect, and adequate attention/concentration, decision-making and appearance/behavior.  (R. at 26-30 (providing pinpoint cites).)

Plaintiff does not challenge the ALJ's finding that Ms. Oleksy's opinions are inconsistent with her treatment records.  She instead contends that the questionnaire was not "confusing" and that the ALJ incorrectly stated that the form did not define "markedly" and "moderately."  (DE 15 at 21-22.)  However, the ALJ reasonably found Mr. Oleksy's off-task assessment confusing because she checked two boxes in response to the question that only called for one answer.  (R. at 31, citing R. at 1211.) And while the ALJ was incorrect that the form did not define "markedly" and "moderately," she also found that the opinion "did not give specific limitations that [Plaintiff] would have due to those findings," a finding not challenged by Plaintiff.  (R. at 31, citing R. at 1212-13.)  The factual error by the ALJ is harmless where the ALJ otherwise provided substantial evidence supporting her award of little weight to Ms. Oleksy's restrictive opinion, especially the ALJ's

unchallenged findings that the opinion is inconsistent with Plaintiff's treatment notes reflecting a much higher level of mental functioning. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 712-14 (6th Cir. 2012) (finding that the ALJ's factual error was harmless where substantial evidence otherwise supports her findings). Accordingly, Plaintiff's second claim of error should be denied.

### 3.    Sentence Six

After the ALJ's decision, Plaintiff presented the Appeals Council with a one-page hospital note showing that she was admitted on December 7, 2017 for "Revision of Enterra II device Generator" and that there were no complications. (R. at 8.) Plaintiff did not produce the remainder of the document, but argues that the need for revision surgery is proof that she is a "work in progress" and that it would be "impossible" for her to be a "reliable employee." (DE 15 at 23-25.) She also posits that "there is a reasonable probability that the failed gastric pacemaker insertion would also affect the treating GI surgeon's prognosis." (*Id.* at 24.)

"It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The Court can remand for further administrative proceedings pursuant to Sentence Six "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146,

148-49 (6th Cir. 1996); 42 U.S.C. § 405(g). For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)).

A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant's condition and treatment subsequent to the date of decision is intrinsically irrelevant. *See Sizemore*, 865 F.2d at 712. Rather, "[t]he evidence must relate 'to the period on or before the date of the administrative law judge hearing decision.'" *See Kerspilo v. Comm'r of Soc. Sec.*, No. 13-CV-14476, 2015 WL 1469461, at *10 (E.D. Mich. Mar. 19, 2015) (citing 20 C.F.R. § 404.970(b)). It is well-settled that "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Sizemore*, 865 F.2d at 712).

Finally, a plaintiff must also demonstrate good cause by "giv[ing] a valid reason for his [or her] failure to obtain evidence prior to the hearing." *Oliver*, 804

F.2d at 966 (emphasis added); *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."). The Sixth Circuit takes a "hard line" on the issue of good cause. *Id.*

The Commissioner concedes that Plaintiff's post-decision submission "satisfies the newness and good cause requirements[,]" but argues that Plaintiff has not shown that it is material. (DE 17 at 25.) The Commissioner points out that the one-page note only shows that Plaintiff underwent a complication-free procedure to revise a previously placed gastric stimulator, and that Plaintiff has not produced any records that Dr. Stalin changed his opinion as a result of that surgery or otherwise documenting her condition before and after surgery. Therefore, there is no evidence that the ALJ might reasonably change her determination that Plaintiff was not disabled as of October 11, 2017. (*Id.*)

I agree that Plaintiff has failed to meet her burden to show that this one-page record is material and justifies a Sentence Six remand, *i.e.,* that there is "a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The need for a second surgery after the ALJ's decision does not demonstrate that the ALJ would have reached a different determination as to Plaintiff's disability as of October 2017. Rather, to the extent that this surgical note, dated

22

two months after the ALJ's decision, suggests that Plaintiff's condition is worsening or changed, remand is not warranted because evidence of a change in Plaintiff's condition after the ALJ's decision is not material for purposes of Sentence Six. *See Wyatt*, 974 F.2d at 685 ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."). Accordingly, Plaintiff's request for a Sentence Six remand should be denied.

### F. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion to remand pursuant to Sentences Four and Six (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 14, 2019                          s/*Anthony P. Patti*
                                                 Anthony P. Patti
                                                 UNITED STATES MAGISTRATE JUDGE